OPINION
Appellant, Stephanie Baker, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor daughter, Sarah Conklin, to Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
Appellant is the biological mother of Sarah Conklin. The whereabouts of Sarah's biological father's are unknown. Appellant is married to Steven Baker ("Baker"), who is Sarah's stepfather.
The family has a history with BCCSB and the Butler County Juvenile Court. BCCSB removed Sarah and her younger half-brother from appellant's home in October 1995 due to unsanitary and unsafe conditions. Both children were found to be neglected and dependent in November 1995 and were placed in the temporary custody of BCCSB. Sarah was returned to appellant in June 1996 and her brother was returned in November 1996.
In late 1997, BCCSB received referrals alleging that Sarah was acting out sexually with other children. On February 14, 1998, BCCSB received a referral that Sarah had been sexually molested by her stepfather.
An investigation was performed by BCCSB and the Oxford Police Department. BCCSB was granted temporary custody of Sarah on February 17, 1998. On February 18, 1998, BCCSB filed a complaint in the Juvenile Division of the Butler County Court of Common Pleas, alleging that Sarah was an abused and dependent child pursuant to R.C. 2151.03 and R.C. 2151.04. Based on the evidence presented at an adjudication hearing on August 6, 1998, the trial court found Sarah was an abused and dependent child. Specifically, the trial court found that Sarah had been sexually abused and that Baker was the perpetrator of the abuse. At the hearing, appellant and Baker stipulated to the allegations and agreed that Sarah had been sexually molested by Baker and was a dependent child.
A case plan was initiated which required that there be no contact between Baker and Sarah. The plan called for appellant and Baker to participate in counseling for parents of abused children through Catholic Social Services. Appellant and Baker attended a counseling session, but neither was willing to admit that Sarah had been abused by Baker. Baker refused the counselor's invitation to attend group sessions for persons who have sexually abused children. Although she stipulated to the abuse at the hearing, appellant refused to admit that her husband had abused Sarah. The social worker for Catholic Social Services determined that neither appellant nor Baker was amenable to therapy because they were unwilling to admit that Sarah had been abused by her stepfather.
A motion requesting permanent custody was filed by BCCSB on July 16, 1999. A hearing was held on November 29, 1999. At the hearing appellant testified that Baker had moved out of the home and had not been living there for "at least five or six months." She stated that she has no contact with him, other than crossing paths during their son's visitation times. She testified that the last time she had any contact with Baker was a court date in August 1999. She testified that she now believes that her husband sexually abused Sarah and that she is able to adequately protect her daughter.
At the hearing, Diane Ruther, a therapist at Community Crisis and Counseling Center, testified that she first counseled appellant in 1996 when the children were removed for the first time. She stated that appellant resumed regular counseling sessions in October 1998, when she realized that her children might be taken away permanently. Ruther testified that appellant told her Baker moved out in July and that she believed he was out of appellant's life. Ruther stated that although she was "torn" on the issue, appellant probably should get her children back, but that her opinion on this issue would change if she knew appellant was still seeing Baker.
Much of the remaining testimony contradicted appellant's testimony in court and the statements she made to Ruther in counseling sessions. Baker testified that he had just seen appellant four days before the hearing, on Thanksgiving Day, when the two of them went to a family dinner together. Baker's aunt, Mary Baker, testified that appellant and Baker were together at Thanksgiving and that Baker was still living with appellant. She stated that Baker's vehicles were always at appellant's trailer. She also testified that her caller ID shows that Baker calls her from appellant's house. Mary Baker testified that she is convinced appellant cannot stay apart from Baker.
Mindy Arnold, a caseworker for BCCSB, testified that there are credibility problems with appellant's statements and that there are concerns about appellant's ability to protect her daughter.
The guardian ad litem ("GAL") appointed by the court issued a report which expressed concern regarding the conflicting testimony regarding appellant's unwillingness to believe that Baker had abused her daughter. The GAL was also very concerned with appellant's continued involvement with Baker. The GAL recommended that the motion for permanent custody be granted, noting that appellant had shown "too little progress too late and apparently only in light of the pending motion."
On March 17, 2000, the trial court issued an order finding that permanent custody should be granted to BCCSB. Appellant appeals this decision, raising the following four assignments of error:
Assignment of Error No. 1:
 THE COURT ERRED IN TERMINATING THE APPELLANT'S PARENTAL RIGHTS DUE TO HER CONTINUED CONTACT WITH HER HUSBAND.
Assignment of Error No. 2:
 THE COURT ERRED IN TERMINATING THE APPELLANTS [sic] PATERNAL [sic] RIGHTS DUE TO HER FAILURE TO COMPLETE COUNSELING.
Assignment of Error No. 3:
 THE COURT ERRED IN FINDING THAT THE BCCSB MADE REASONABLE EFFORTS TO ELIMINATE THE NEED FOR SARAH'S ONGOING REMOVAL FROM THE CARE OF APPELLANT.
Assignment of Error No. 4:
 THE COURT'S FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant's first three assignments of error relate to the trial court's orders underlying the grant of permanent custody and will be discussed after appellant's fourth assignment of error, which challenges the trial court's decision to grant permanent custody.
We begin with the constitutional principle that natural parents have a constitutionally-protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982), 455 U.S. 745,102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it."Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In reWilliam S. (1996), 75 Ohio St.3d 95.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the trial court must also find by clear and convincing evidence that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1).
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, includ-ing whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
In this case, the trial court found by clear and convincing evidence that granting the motion of BCCSB for permanent custody was in Sarah's best interest. The court noted that this was the second time BCCSB had temporary custody of Sarah. The trial court found that Sarah had been in the same foster home for twenty-two months and is extremely bonded to her foster family, while appellant's relationship with Baker would be harmful to Sarah.
Evidence presented at the hearing indicated that Sarah has bonded with her foster family and that the family would like to adopt her. There is evidence that Sarah is progressing well in therapy. The GAL recommended that BCCSB be granted permanent custody. Appellant's refusal to accept her husband as the perpetrator of the abuse until close to the date of the hearing, her credibility problems, and her apparent inability to sever her relationship with Sarah's abuser support the trial court's finding that granting permanent custody to BCCSB is in Sarah's best interest.
The trial court also determined by clear and convincing evidence that Sarah cannot be placed with a parent within a reasonable time. R.C. 2151.41
provides that the court shall enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E)(1)-(16) apply. The trial court's finding was made pursuant to R.C. 2151.414(E)(1) which provides a child cannot be placed with a parent in a reasonable time if:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 The record supports the trial court's conclusion that Sarah could not be placed with appellant within a reasonable time. As the trial court noted, except for one counseling session with Catholic Social Services, Baker has received no counseling. Appellant only recently stated that she believes that her daughter was abused by Baker, and the credibility of her statement was seriously questioned at the hearing. Sarah was removed from appellant's home on February 17, 1998.
In the twenty-two months between the time BCCSB was granted temporary custody and the time of the hearing, appellant made little, if any, progress in creating a safe environment for her daughter. She steadfastly refused to believe her husband abused Sarah until shortly before the hearing. The evidence at the hearing indicated that appellant's credibility is an issue and that she is unable to sever her relationship with Baker. Although appellant has been given every opportunity to regain custody of her daughter, the evidence shows a lack of genuine commitment on her part to remedy the conditions which prompted Sarah's removal. The evidence supports the trial court's finding that appellant has failed continuously and repeatedly to substantially remedy the conditions causing the Sarah to be placed outside her home. Appellant's fourth assignment of error is overruled.
Appellant's remaining three assignments of error relate to the trial court's orders underlying the order granting permanent custody. In her first assignment of error, appellant contends that the trial court erred by basing a large part of its determination on a finding that she continued to have contact with her husband. Appellant argues that an order prohibiting contact between her and her husband is overly broad and is an undue restriction on marital rights.
Appellant relies on In re Piper Children (1993), 85 Ohio App.3d 318, in support of this assignment of error. However, the facts of this case are distinguishable. In Piper, the court ordered no contact between a mother and her husband, who was the abuser the children. Id. at 329. This court found that the order was an infringement on the mother's marital rights and modified the order to state the mother should have no contact with her husband while the children were in her custody and that there should be no contact between the children and her husband. Id.
In this case, the trial court ordered that there be no contact between Sarah and Baker. Ruther testified that she counseled appellant that she needed to get Baker out of her home in order to get her children back. Appellant steadfastly held to a belief that Baker did not abuse Sarah until close to time for the permanent custody hearing. The evidence at the hearing indicated that appellant is unable to stay away from Baker and that Baker is often at appellant's home. Appellant is not in a position to protect Sarah since the child can not return to a home environment in which appellant still has an ongoing relationship with the child's abuser. This was a legitimate factor for the court's consideration. Appellant's first assignment of error is overruled.
In her second assignment of error, appellant contends that the court erred by terminating her parental rights due to her failure to complete counseling. Again, appellant relies on a case which is distinguishable. We have previously found that a trial court erred in requiring a father to receive sex offender treatment when it had not been determined that he was the perpetrator of the abuse. In re Sarah H. (1993),86 Ohio App.3d 455. However, in this case, while appellant was ordered to attend counseling by CCS, the court did not specifically order sexual offender counseling, and there is nothing in the record that indicates appellant is a suspected sexual offender. In addition, the failure to complete counseling was not the primary factor in the court's decision. Appellant's second assignment of error is overruled.
In her third assignment of error, appellant contends that the trial court erred in finding that the BCCSB made reasonable efforts to eliminate the need for Sarah's ongoing removal from appellant. Appellant contends that other than the CCS counseling, she complied with all the counseling she was ordered to undergo.
Before granting permanent custody, R.C. 2151.414(E)(1) requires an agency to develop a reasonable case plan and to use diligent efforts to assist the parent to remedy the problems that initially caused the child to be placed outside the home. Although appellant underwent counseling with Ruther, the evidence at the hearing established that very little, if any, progress was made by appellant to provide a safe environment for Sarah. At issue during the counseling sessions was appellant's unwillingness to accept that Baker was the perpetrator of the abuse. As late as September, appellant was stating that although she believed her daughter, she also believed her husband.
BCCSB made reasonable efforts to provide appellant with the opportunity to undergo counseling so that she could regain custody of her daughter. However, the evidence at the hearing showed little effort on the part of appellant to utilize the counseling and to create a safe environment for Sarah. Appellant's third assignment of error is overruled.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.